ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| MARGARITA CLEOPATRA CASAS RIVERA Y OTROS | | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Aibonito |
|---|---|---|
| Peticionarios | | |
| v. | KLAN202500172 | Caso Núm.: AI2021CV00281 |
| MENNONITE GENERAL HOSPITAL, INC. Y OTROS | | Sobre: Negligencia e Impericia |
| Recurridos | | |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero, el Juez Campos Pérez y el Juez Sánchez Báez

Campos Pérez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 25 de junio de 2025.

La parte demandante y peticionaria, conformada por el Sr. Rafael Rodríguez Maldonado y la Sra. Margarita Casas Rivera, por sí y en representación de su hijo menor de edad F.R.R.C., comparece mediante un escrito intitulado *Apelación*.[1] Solicita nuestra intervención para revocar el dictamen denominado *Sentencia Sumaria Parcial*, emitido el 26 de noviembre de 2024 y notificado el 2 de diciembre de 2024, por el Tribunal de Primera Instancia, Sala Superior de Aibonito. En el referido pronunciamiento, el foro primario decretó la desestimación de la reclamación civil en contra de seis de los demandados y recurridos, a saber: Hermelinda Aponte Berríos, Soneida Luna Green, María Santini Torres, Johanny Suárez Olivieri, Lcda. Maribel Toro y el Mennonite General Hospital, Inc. (en adelante, HGMI por sus siglas en español, Hospital General Menonita

---

[1] El 22 de febrero de 2022, el foro *a quo* dictó una *Sentencia Parcial* en la que ordenó el archivo sin perjuicio de la *Demanda*, en cuanto a la parte demandante, Sociedad Legal de Gananciales compuesta por Margarita Casas Rivera y Rafael Rodríguez Maldonado. Véase, entrada 83 del expediente electrónico en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).

de Aibonito), éste último en cuanto a la responsabilidad vicaria imputada por estas partes.[2]

Acogemos el recurso de epígrafe como un auto discrecional de *certiorari* por ser el recurso adecuado, conforme dispone la Regla 42.3 de Procedimiento Civil, 32 LPRA Ap. V, y su jurisprudencia interpretativa.[3] Es decir, debido a que no se finiquitaron todas las controversias entre las múltiples partes del pleito y el Tribunal omitió concluir expresamente que no existía razón para posponer dictar sentencia sobre las reclamaciones o partes de autos, hasta la resolución total del pleito, la determinación recurrida no adquirió la finalidad exigida por las normas procesales. Por consiguiente, la decisión judicial no se considera una sentencia parcial final apelable; sino una resolución interlocutoria, revisable mediante un recurso de *certiorari*. No obstante, en aras de una solución justa, rápida y económica, conservamos la clasificación alfanumérica asignada por la Secretaría de este Tribunal.

**I.**

Por hechos alegados entre el 2 y el 5 de agosto de 2020, la parte demandante presentó una *Demanda* el 31 de julio de 2021. Posteriormente, instó *Demanda Enmendada*, con la anuencia del Tribunal.[4] Se indicó que la señora Casas Rivera dio a luz a F.R.R.C. por cesárea en el HGMI el 2 de agosto de 2020 a las 7:36 de la noche. El niño nació en condición normal y estado satisfactorio. Se le adjudicó una escala de Apgar 8/9.

Con relación a las alegaciones que nos competen, la parte demandante adujo que la enfermera **Hermelinda Aponte Berrios**

---

[2] Permanecen en el pleito los demandados HGMI y el Dr. Orlando Rodríguez Matos. En cuanto al Dr. Jesús Zayas Burgos, el Tribunal dictó una *Sentencia Parcial* y *Sentencia Parcial Enmendada*, mediante la cual desestimó con perjuicio la reclamación en contra del galeno. Entradas 92 y 99 del SUMAC.
[3] Véase, *Rosario et al. v. Hosp. Gen. Menonita, Inc.*, 155 DPR 49, 56-58 (2001); *García v. Padró*, 165 DPR 324, 332-334 (2005); *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 95-96 (2008); *Freire Ruiz et al. v. Morales, Hernández*, 2024 TSPR 129; 215 DPR __ (2024).
[4] Apéndice de la parte peticionaria, págs. 958-975. Además, entradas 31, 41 y 45 del SUMAC.

documentó que se recibió en el "nursery" al neonato desde la sala de operaciones. No se indicó daño alguno en la cabeza, pero sí un hematoma en la espalda del niño, el cual fue documentado el 2 de agosto de 2020 a las 7:54 pm. La madre afirmó que la enfermera Aponte Berrios le dijo que éste se produjo por estimulación del recién nacido al nacer.[5]

Expuso la parte demandante que, la mañana de 4 de agosto de 2020, la enfermera **Soneida Luna Green**, por primera vez, documentó que observó una lesión en el lado derecho de la cabeza del niño, la cual describió como seca, sin secreciones ni enrojecimiento. La enfermera Luna Green suscribió que, luego de bañar al recién nacido a la 9:00 de la mañana, dio cuidado local al área.[6] A las 4:30 de la tarde, la enfermera Luna Green documentó que la madre del menor no había visto la laceración en la cabeza del neonato. Se notificó al Dr. Orlando Rodríguez Matos; quien ordenó la aplicación de un antibiótico tópico.[7] La parte demandante imputó a la enfermera Luna Green el incumplimiento de su deber de notificar inmediatamente a la madre de F.R.R.C., al pediatra y al Programa de Manejo de Riesgo para que interviniera con una investigación. La parte demandante imputó también a la enfermera Luna Green haber brindado cuido local a la herida, sin una orden médica, ni describir qué tipo de cuidado ofreció ni los medicamentos o materiales que utilizó, si alguno. Añadió que la enfermera Luna Green implicó que la señora Casas Rivera se debió haber dado cuenta de la laceración, lo que creó incertidumbre sobre cuándo ocurrió el evento.

La parte demandante aseveró que, en la noche de 4 de agosto de 2020, la enfermera **María Santini Torres** documentó observar

---

[5] Véase, Apéndice de la parte peticionaria, págs. 836 y 918.
[6] Véase, Apéndice de la parte peticionaria, págs. 923 y 922.
[7] Véase, Apéndice de la parte peticionaria, pág. 927.

una pequeña laceración en la parte derecha de la cabeza del recién nacido sin secreciones y libre de enrojecimiento.[8]

F.R.R.C. fue dado de alta el 5 de agosto de 2020, en horas de la mañana. Se consignó que se trataba "de un recién nacido masculino el cual nace por vía cesárea por lo que se observa por 72 horas en el nursery" [...] "tolerando dieta, sin complicaciones y signos vitales normales".[9]

Por este evento, el 16 de septiembre de 2020, la señora Casas Rivera incoó una querella en el HGMI. El asunto fue referido al Departamento de OB-Gyn, quien pasó juicio e informó que fueron riesgos esperados durante el proceso de parto vía cesárea. La Sra. **Johanny Suárez Olivieri**, Coordinadora del Programa de Manejo de Riesgo del HGMI remitió la respuesta. Se determinó que no hubo desviación de los procedimientos clínicos y que se reforzarían las áreas de oportunidad de mejoramiento. La **Lcda. Maribel Toro Colón**, Administradora del HGMI, endosó la comunicación.

La parte demandante impugnó la contestación. Alegó que se debió incluir el documento producto del obstetra para validar la comunicación, ya que no surgía qué riesgos de la cesárea causaron laceraciones al cuero cabelludo del neonato. Sostuvo que la cuestión se debió dirigir al Departamento de Pediatría, sección de "nursery". Apuntó que los procedimientos clínicos no fueron objeto de contenciones, sino la forma en que ocurrió el trauma, de lo cual la señora Suárez Olivieri no fue responsiva, toda vez que no se contestó la interrogante de la causa de la laceración. Razonó que la implantación de refuerzos implicaba la admisibilidad de negligencia en mantener la seguridad del menor. A pesar de estas deficiencias, cuestionó que la licenciada Toro Colón suscribiera el documento.

---

[8] Véase, Apéndice de la parte peticionaria, pág. 927.
[9] Véase, Apéndice de la parte peticionaria, pág. 833.

La parte apelante manifestó que la carencia de información sobre cómo se produjo la lesión le ha causado desasosiego, ansiedad, incertidumbre y desesperación. La parte demandante sostuvo que las acciones y omisiones del personal de enfermería, el Programa de Manejo de Riesgo y el Dr. Orlando Rodríguez Matos, se distanciaron de los estándares de certificación, principios que rigen la mejor práctica de la medicina y la Carta de Derechos y Responsabilidades de Pacientes; constituyendo el nexo causal de actos negligentes y mala práctica médica. En consecuencia, solicitó $1,000,000 para cada integrante de la familia y $25,000 por concepto de honorarios de abogado.

El 1 de octubre de 2021, HGMI contestó la reclamación civil.[10] En la mayoría de sus respuestas, negó los hechos de la *Demanda Enmendada,* "por falta de información y conocimiento suficiente para formar una opinión en cuanto a la veracidad de lo aseverado. De esta aseveración no ser enmendada expresamente, la alegación deberá considerarse negada en su totalidad". Aceptó el proceso de la querella, haber realizado una investigación y provisto el resultado de ésta mediante una misiva fechada el 16 de septiembre de 2020 y suscrita por la señora Suárez Olivieri. Afirmó haber brindado un manejo adecuado a la queja. En cuanto a la investigación, manifestó que no hubo desviación en los procedimientos clínicos realizados.

Por igual, el HGMI negó todas las imputaciones de negligencia. Aseveró que el tratamiento médico y cuidado brindado a F.R.R.C. se ajustó al estado de conocimiento de la ciencia en la buena práctica prevaleciente de la medicina y satisfizo las exigencias generalmente reconocidas por la profesión médica y de enfermería para la condición que éste presentaba.

---

[10] Apéndice de la parte recurrida, págs. 1-17.

Entre sus defensas afirmativas, el HGMI enunció que la reclamación era totalmente frívola y no justificaba la concesión de un remedio. Planteó que los daños reclamados eran excesivos y no guardaban proporción con los daños realmente sufridos, si alguno, así como que la parte demandante no los mitigó. Indicó que no existía relación causal entre los daños reclamados y el tratamiento brindado por el personal médico y de enfermería de la institución hospitalaria. Sobre este particular, sostuvo que el tratamiento, cuidado y atención médica brindados por sus empleados cumplieron con las exigencias profesionales generalmente aceptadas y reconocidas por la profesión médica a la luz de los medios de comunicación y enseñanza, y conforme al estado de conocimiento de la ciencia y la práctica prevaleciente en la medicina para la prestación del mismo bajo las circunstancias particulares del presente caso. Acotó que al tratamiento médico brindado en este caso le cobijaba una presunción de corrección.

El 25 de octubre de 2021, las cinco demandadas presentaron en conjunto su alegación responsiva.[11] En esencia, reprodujeron la negación general "por falta de información y conocimiento suficiente para formar una opinión en cuanto a la veracidad de lo aseverado". De igual modo, negaron las alegaciones de negligencia y daños bajo los mismos fundamentos expresados por el HGMI. Reiteraron las defensas afirmativas esbozadas antes y expresaron que no estaban presentes los elementos necesarios para que a las demandadas pudiera imponérseles responsabilidad por los daños alegados. Indicaron que no incurrieron en ningún acto u omisión negligentes en el cuidado y tratamiento brindado F.R.R.C. que guarde nexo con los daños alegados por la parte demandante.

---

[11] Apéndice de la parte recurrida, págs. 18-39.

Atendidos otros asuntos procesales, innecesarios de pormenorizar, luego de **finalizado el descubrimiento de prueba el 15 de junio de 2024**,[12] la parte demandada presentó *Moción de Sentencia Sumaria Parcial*.[13] Unió a la solicitud las deposiciones tomadas a la señora Casas Rivera (Anejo 1),[14] al señor Rodríguez Maldonado (Anejo 2)[15] y a su perito, el Dr. Edwin Miranda Aponte (Anejos 3 y 4).[16]

La parte demandada indicó que la reclamación de la parte demandante se suscribía a los siguientes asuntos argüidos: (1) estimulación innecesaria al menor F.R.R.C. al nacer provocándole un hematoma en la espalda; (2) una laceración en la cabeza durante su estancia en el hospital y no haberse notificado inmediatamente a los padres y al Departamento de Manejo de Riesgo del hospital; y (3) el manejo inadecuado de una querella que presentó la señora Casas Rivera en el Departamento de Manejo de Riesgo del HGMI luego de dichos eventos. A base de la evidencia descubierta, propuso **28** determinaciones fácticas como incontrovertibles:

> 1. El 2 de agosto de 2020, a las 7:36 pm, la demandante Margarita C. Casas Rivera se le realizó una cesárea, en la cual nació el menor demandante FRRC, en el [HGMI]. *Véase Demanda Enmendada, pág. 14; y Transcripción de Continuación de Deposición tomada a la demandante Margarita C. Casas Rivera el 28 de marzo de 2023, marcada como Anejo 1, pág. 161, líneas 2-4.*
>
> 2. Durante su estancia en el [HGMI] luego de la cesárea, el menor demandante estuvo la mayor parte del tiempo en el cuarto con la Sra. Margarita Casas. En las mañanas, al menor lo buscaban para asearlo y luego lo regresaban al cuarto con su mamá donde pasaba el día y la noche. *Véase Anejo 1, pág. 151, líneas 8-25 y pág. 152, líneas 1-4.*
>
> 3. Durante su d[e]posición, la demandante Casas Rivera admitió no saber los hechos, las conductas, actos u omisiones que harían responsable a la codemandada Hermelinda Aponte Berríos con relación a los hechos alegados en la *Demanda Enmendada. Véase Anejo 1, pág. 136, líneas 9-18.*
>
> 4. La demandante Casas Rivera admitió, además, desconocer si la codemandada Hermelinda Aponte Berríos le ocasionó la laceración en la cabeza de su hijo. *Véase Anejo 1, pág. 137, línea 25 y pág. 138, líneas 1-2.*

---

[12] Entradas 210, 230-231 del SUMAC.
[13] Apéndice de la parte peticionaria, págs. 1-822.
[14] Apéndice de la parte peticionaria, págs. 22-286.
[15] Apéndice de la parte peticionaria, págs. 287-371.
[16] Apéndice de la parte peticionaria, págs. 373-645; 646-822.

5. De igual forma, la demandante Casas Rivera admitió desconocer si la codemandada Hermelinda Aponte Berríos le ocasionó los hematomas en la espalda de su hijo. *Véase Anejo 1, pág. 138, líneas 3-4.*

6. La demandante Casas Rivera admitió no saber los actos u omisiones que harían responsable a la codemandada Soneida Luna Green por los daños que se alegan en el caso. *Véase Anejo 1, pág. 138, líneas 21-24 y pág. 139, líneas 4-5.*

7. La demandante Casas Rivera admitió desconocer y no tener información sobre si la codemandada Soneida Luna Green le ocasionó el hematoma en la espalda y la laceración en la cabeza de su hijo. *Véase Anejo 1, pág. 139, líneas 7-12.*

8. La demandante Casas Rivera admitió desconocer los actos u omisiones que harían responsable a la codemandada María Santini Torres de los daños alegados en el caso. *Véase Anejo 1, pág. 139, líneas 13-25.*

9. La demandante Casas Rivera admitió no saber los actos u omisiones negligentes que harían responsable a la codemandada Maribel Toro de los daños alegados en la *Demanda* [*Enmendada*]. *Véase el Anejo 1, pág. 159, líneas 11-19.*

10. El demandante Rafael A. Rodríguez Maldonado no tiene evidencia de que la codemandada Hermelinda Aponte Berríos le ocasionó las marcas en la espalda de su hijo. *Véase Transcripción de la Continuación de Deposición tomada al demandante Rafael A. Rodríguez Maldonado el 31 de julio de 2023, marcada como Anejo 2, pág. 45, líneas 2-8.*

11. El demandante Rafael A. Rodríguez Maldonado no tiene evidencia ni certeza sobre si la codemandada Hermelinda Aponte Berríos le ocasionó la laceración en la cabeza de su hijo. *Véase el Anejo 2, pág. 45, líneas 9-12.*

12. El demandante Rafael A. Rodríguez Maldonado no tiene evidencia sobre si la codemandada Soneida Luna Green le ocasionó las marcas en la espalda de su hijo. *Véase Anejo 2, pág. 45, líneas 13-16.*

13. El demandante Rafael A. Rodríguez Maldonado no tiene evidencia sobre si la codemandada Soneida Luna Green le ocasionó la laceración en la cabeza de su hijo. *Véase Anejo 2, pág. 45, líneas 17-20.*

14. El demandante Rafael A. Rodríguez Maldonado no tiene evidencia sobre si la codemandada María Santini Torres le ocasionó las marcas en la espalda de su hijo. Véase Anejo 2, pág. 45, líneas 21-24.

15. El demandante Rafael A. Rodríguez Maldonado no tiene evidencia sobre si la codemandada María Santini Torres le ocasionó la laceración en la cabeza de su hijo. *Véase Anejo 2, pág. 46, líneas 1-4.*

16. Con relación a sus alegaciones de responsabilidad médico-hospitalaria, la parte demandante contrató como perito al Dr. Edwin Miranda Aponte, quien rindió un informe pericial con fecha de 30 de julio de 2021. *Véase, Sentencia Parcial emitida el 30 de marzo de 2022, en la cual este Honorable Tribunal hace referencia y discute el Informe Pericial rendido por el Dr. Edwin Miranda. [SUMAC # 92].*

17. Durante su deposición, el Dr. Miranda Aponte admitió desconocer si la codemandada enfermera Hermelinda Aponte Berríos estuvo presente en la cesárea que se le realizó a Margarita Casas. *Véase Transcripción de Deposición tomada al Dr. Edwin Miranda Aponte el 26 de octubre de 2023, marcada como Anejo 3, pág. 197, líneas 7-9.*

18. El doctor Miranda admitió durante su deposición que del récord médico de la cesárea de Margarita Casas en [el HGMI] no surge que las marcas que tenía el bebé en la espalda fueron consecuencia de una estimulación al nacer. *Véase el Anejo 3, pág.198, líneas 1-4.*

19. Durante su deposición, el Dr. Miranda Aponte admitió no haber identificado algún acto negligente con relación al hematoma en la espalda del menor demandante. *Véase Transcripción de Continuación de Deposición tomada al Dr. Edwin Miranda Aponte el 24 de mayo de 2024, marcada como Anejo 4, pág. 140, líneas 10-13.*

20. El Dr. Miranda Aponte admitió durante su deposición que la laceración en la cabeza del menor demandante no ocurrió en la guardería ("nursery"). *Véase el Anejo 3, pág. 200, líneas 23-25 y pág. 201, líneas 1-9.*

21. El Dr. Miranda Aponte admitió que era probable que la laceración ocurrió mientras el menor estuvo en el cuarto con su mamá. *Véase el Anejo 3, pág. 202, líneas 4-13.*

22. El Dr. Miranda Aponte declaró durante su deposición que quien ordenó aplicar el triple antibiótico a la laceración del menor demandante fue el Dr. Orlando Rodríguez Matos y no la enfermera Soneida Luna Green. *Véase el Anejo 3, pág. 223, líneas 18-25.*

23. El Dr. Miranda Aponte admitió durante su deposición que la literatura de CMS ("Centers for Medicare and Medicaid Services") y de la "Joint Commission" que utilizó para rendir su opinión no establece que la enfermera Soneida Luna Green debía notificar inmediatamente al Programa de Manejo de Riesgo del hospital sobre la laceración. *Véase el Anejo 3, pág. 224, líneas 3-25, págs. 225 y 226.*

24. El Dr. Miranda Aponte admitió durante su deposición que no hubo actos u omisiones negligentes en el manejo de la querella que presentó Margarita Casas en el [HGMI] sino que la contestación a la misma no satisfizo a la demandante. *Véase Anejo 4, pág. 23, línea 25 y pág. 24, líneas 1-7.*

25. El Dr. Miranda admitió durante su deposición que la codemandada Johanny Suárez no fue negligente en el manejo de la querella presentada por la Sra. Casas Rivera. *Véase Anejo 4, pág. 24, líneas 9-12; y pág. 55, líneas 6-9.*

26. El Dr. Miranda admitió durante su deposición que la codemandada Maribel Toro no incurrió en actos u omisiones negligentes en este caso. *Véase el Anejo 4, pág. 54, líneas 11-24 y pág. 55, líneas 6-9.*

27. El Dr. Miranda admitió durante su deposición que la enfermera codemandada María Santini no incurrió en ningún acto u omisión negligente en este caso. *Véase el Anejo 4, pág. 51, líneas 23-24, pág. 52, líneas 1-4 y pág. 57, líneas 2-5.*

28. El Dr. Miranda Aponte no tiene evidencia objetiva con relación a si el hematoma de la espalda del menor provocó alguna secuela o daño al menor demandante. *Véase el Anejo 4, pág. 139, líneas 2-10.*

A la luz de lo anterior y el derecho aplicable, la parte demandada solicitó que se dictara sentencia sumaria parcial a favor de la señora Suárez Olivieri, la licenciada Toro Colón, así como las enfermeras Aponte Berríos, Luna Green, Santini Torres y HGMI, en

calidad vicaria, toda vez que la parte demandante carecía de prueba para establecer las alegaciones de negligencia imputadas en la *Demanda Enmendada*.

El 5 de septiembre de 2024, la parte demandante instó *Oposición a Moción de Sentencia Sumaria Parcial*.[17] Anejó el *Informe Médico Pericial* suscrito por el doctor Miranda Aponte.[18] Los demandantes acogieron **22** enunciados, según esbozados por los demandados. Adujeron que **sólo eran controvertibles seis de los enunciados propuestos**.

> **3. Durante su d[e]posición, la demandante Casas Rivera admitió no saber los hechos, las conductas, actos u omisiones que harían responsable a la codemandada Hermelinda Aponte Berríos con relación a los hechos alegados en la *Demanda Enmendada*.**

Para controvertir, la parte demandante indicó que "[a] mí nadie nunca me dijo lo que tenía el nene en la cabeza".[19]

> **23. El Dr. Miranda Aponte admitió durante su deposición que la literatura de CMS ("Centers for Medicare and Medicaid Services") y de la "Joint Commission" que utilizó para rendir su opinión no establece que la enfermera Soneida Luna Green debía notificar inmediatamente al Programa de Manejo de Riesgo del hospital sobre la laceración.**

La parte demandante aludió al Anejo 3 de la parte demandada, a las págs. 224, líneas 3-25, 225 y 226 para controvertir la aseveración.[20] En éstas, el doctor Miranda Aponte aclaró que las aludidas fuentes indican que el evento no esperado debía notificarse, aunque no establece un marco de tiempo, es decir, no tiene que ser inmediatamente. Acotó el perito: "Yo creo que en el momento en que se da cuenta, es el momento de hacerlo".

> **24. El Dr. Miranda Aponte admitió durante su deposición que no hubo actos u omisiones negligentes en el manejo de la querella que presentó Margarita Casas en el [HGMI] sino que la contestación a la misma no satisfizo a la demandante.**

---

[17] Apéndice de la parte peticionaria, págs. 823-854.
[18] Apéndice de la parte peticionaria, págs. 831-849; véase, además, págs. 850-854.
[19] Véase, Apéndice de la parte peticionaria, pág. 138 líneas 12-13.
[20] Véase, Apéndice de la parte peticionaria, págs. 596 líneas 3-25; 597 y 598.

Al oponerse, la parte demandante se refirió al Anejo 4, págs. 23, línea 25 y 24, líneas 1-[8] de la deposición del doctor Miranda Aponte y el *Informe Médico Pericial*.

> P. Mire, ¿qué actos u omisiones negligentes usted específicamente encuentra que se dieron en este caso con relación al manejo de esta querella presentada por Margarita Casas?
>
> R. Bueno, eh... eh... yo creo que... No es acto negligente. Es que, ciertamente, la contestación a la querella no satisface las necesidades y las inquietudes de la demandante. Y eso está ampliamente descrito en mi informe pericial.

**25. El Dr. Miranda admitió durante su deposición que la codemandada Johanny Suárez no fue negligente en el manejo de la querella presentada por la Sra. Casas Rivera.**

**26. El Dr. Miranda admitió durante su deposición que la codemandada Maribel Toro no incurrió en actos u omisiones negligentes en este caso.**

**27. El Dr. Miranda admitió durante su deposición que la enfermera codemandada María Santini no incurrió en ningún acto u omisión negligente en este caso.**

Para contravenir la trilogía de enunciados, la parte demandante se refirió al Anejo 4, pág. 75, líneas 6-20 y al *Informe Médico Pericial*. Cabe señalar que el fragmento trata solamente de una nota documentada por la enfermera Santini Torres y nada arguyó sobre las aseveraciones que aludían a la señora Suárez Olivieri y a la licenciada Toro Colón.

> P. [...] Y de la nota tampoco se desprende que el menor había sufrido hematomas y que tenía su espalda llena de hematomas.
>
> R. Cierto.
>
> .        .        .        .        .        .        .        .
>
> P. Le pregunto si esa nota es negligente.
>
> .        .        .        .        .        .        .        .
>
> P. Le pregunto si esa nota es negligente, doctor.
>
> R. Incompleta y negligente.

La parte demandante expuso que no procedía un dictamen sumario ante la existencia de controversias sobre elementos subjetivos como la negligencia.

La parte demandada replicó.[21] Ripostó que la parte demandante no refutó de buena fe los hechos probados, con los fragmentos de las deposiciones señalados ni las referencias generales al *Informe Médico Pericial*. Enfatizó que no expuso ni desarrolló ningún argumento que justificara la denegación del remedio sumario parcial.

En cuanto a la determinación de hecho **3**, indicó que la señora Casas Rivera admitió desconocer los actos u omisiones que harían a la enfermera Aponte Berríos responsable. Con respecto al enunciado **23**, planteó que de la literatura consultada no surgía que la notificación tenía que ser inmediata ni dirigida al Programa de Manejo de Riesgo. Con relación a las aseveraciones **24**, **25** y **26** reiteró que el perito Miranda Aponte admitió que no hubo actos u omisiones negligentes en el manejo de la querella, sino que no satisfizo las necesidades e inquietudes de la demandante, por lo que toda alegación sobre ese particular quedaba derrotada. Asimismo, en torno al hecho determinado **27**, planteó que el doctor Miranda Aponte depuso que la enfermera Santini Torres no incurrió en actos u omisiones negligentes ni la reclamación enmendada esbozó imputaciones de negligencia por la supuesta nota incompleta.

Justipreciadas las posturas, el Tribunal notificó su dictamen el 2 de diciembre de 2024.[22] Acogió los planteamientos de la parte demandada. Reprodujo en su dictamen las 28 determinaciones de hechos y concluyó que, ante la ausencia de prueba suficiente para probar las alegaciones formuladas en la *Demanda Enmendada* hacía innecesaria la celebración de un juicio en su fondo en lo que a las partes demandadas comparecientes concierne.

No conteste, la parte demandante interpuso una oportuna *Moción de Reconsideración*, a la que unió 24 anejos, consistentes en

---

[21] Apéndice de la parte peticionaria, págs. 855-863.
[22] Apéndice de la parte peticionaria, págs. 864-895.

notas del expediente médico de F.R.R.C., fragmentos de las deposiciones y del *Informe Médico Pericial*, que incluye dos fotografías.[23] La parte demandada presentó su respectiva oposición.[24] El 29 de enero de 2025, el Tribunal notificó su determinación de declarar no ha lugar la reconsideración.[25]

Inconforme todavía, la parte demandante acudió ante este foro intermedio y esbozó el siguiente señalamiento de error:

> **Erró el Tribunal de Primera Instancia al confundir el estándar hermenéutico y de revisión de una solicitud de sentencia sumaria y el alcance del juzgador para considerar no sólo la solicitud de sentencia sumaria y su oposición, sino la totalidad del expediente, incluyendo los hechos alegados en la demanda.**

En cumplimiento de *Resolución*, la parte demandada presentó *Alegato de las Partes Apeladas* el 31 de marzo de 2025. Con el beneficio de ambas comparecencias, podemos resolver.

## II.

## A.

El auto de *certiorari* es un vehículo procesal que permite a un tribunal de mayor jerarquía revisar las determinaciones judiciales de un foro inferior y corregir algún error cometido por éste. *800 Ponce de León v. AIG*, 205 DPR 163, 174 (2020); *IG Builders et al., v. BBVAPR*, 185 DPR 307, 337-338 (2012); *García v. Padró*, 165 DPR 324, 334 (2005). A diferencia de la apelación, el foro revisor tiene la facultad para expedir o denegar el recurso de *certiorari* de manera discrecional. *García v. Padró, supra.* El Tribunal Supremo de Puerto Rico ha definido *discreción* como el "poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción". *Id.*, que cita a *Pueblo v. Ortega Santiago*, 125 DPR 203, 211 (1990).

---

[23] Apéndice de la parte peticionaria, págs. 896-947. La parte demandada solicitó que el escrito de reconsideración se denegara de plano, a lo que la parte demandante se opuso. Entradas 262-265 del SUMAC.
[24] Apéndice de la parte peticionaria, págs. 948-955.
[25] Apéndice de la parte peticionaria, págs. 956-957.

No obstante, el ejercicio de la discreción no equivale a hacer abstracción del resto del Derecho, ya que ese proceder constituiría, en sí mismo, un abuso de discreción. *Negrón v. Srio. de Justicia*, 154 DPR 79, 91 (2001). Ello así, porque "**el adecuado ejercicio de la discreción judicial está inexorable e indefectiblemente atado al concepto de la razonabilidad**". (Énfasis nuestro). *García v. Padró*, *supra*, pág. 335; *Pueblo v. Ortega Santiago, supra*.

Es sabido que la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, delimita las instancias en las cuales este foro intermedio tiene autoridad para atender los recursos de *certiorari* civiles. En su parte pertinente, la norma dispone como sigue:

.        .        .        .        .        .        .        .

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, **solamente será expedido por el Tribunal de Apelaciones cuando se recurra** de una resolución u orden bajo las Reglas 56 y 57 o **de la denegatoria de una moción de carácter dispositivo**. (Énfasis nuestro).

.        .        .        .        .        .        .        .

La regla procesal fija taxativamente los asuntos aptos para la revisión interlocutoria mediante el recurso de *certiorari*, así como aquellas materias que, por excepción, ameritan nuestra intervención adelantada, ya fuese por su naturaleza o **por el efecto producido a las partes**. *800 Ponce de León v. AIG, supra*, pág. 175.

Además del examen objetivo antes descrito, para ejercer sabia y prudentemente nuestra facultad discrecional al determinar si expedimos o denegamos un recurso de *certiorari*, nos guiamos por la Regla 40 del Reglamento del Tribunal de Apelaciones, *Criterios para la expedición del auto de certiorari*, 4 LPRA Ap. XXII-B, R. 40. Entre sus fundamentos, la reglamentación nos confiere discreción cuando "...**la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración**"; y "**[s]i la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento**

**indebido del pleito y una dilación indeseable en la solución final del litigio**". (Énfasis nuestro). *Id.*

Claro está, es norma asentada que este tribunal intermedio no interviene con las determinaciones emitidas por el foro primario ni sustituye su criterio discrecional, "*salvo que se pruebe que dicho foro actuó con prejuicio o parcialidad, incurrió en craso abuso con el ejercicio de la discreción, o que incurrió en error manifiesto*". (Cursivas en el original). *Citibank et al. v. ACBI et al.*, 200 DPR 724, 736 (2018) y la jurisprudencia allí citada.

**B.**

La Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R. 36, gobierna el mecanismo de la sentencia dictada sumariamente. **La norma procesal permite a los tribunales disponer parcial** o totalmente **de litigios civiles**. *León Torres v. Rivera Lebrón,* 204 DPR 20, 51 (2020). De esta manera, se aligera la conclusión de los pleitos, sin la celebración de un juicio en sus méritos, siempre y cuando no exista una legítima controversia de hechos medulares, de modo que lo restante sea aplicar el derecho. Véase, *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 676 (2018); *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 109 (2015); *Jusino et als. v. Walgreens,* 155 DPR 560, 576 (2001). Así se propende a la solución justa, rápida y económica de los litigios de naturaleza civil en los cuales no exista una controversia genuina de hechos materiales. *Pérez Vargas v. Office Depot*, 203 DPR 687, 699 (2021). Por ello, "**[l]a controversia debe ser de una calidad suficiente como para que sea necesario que un juez la dirima a través de un juicio plenario**". (Énfasis nuestro). *Ramos Pérez v. Univisión,* 178 DPR 200, 213 (2010).

La sentencia sumaria sólo debe dictarse en casos claros. Por tanto, cuando no existe una certeza prístina sobre todos los hechos materiales que motivaron el pleito, no procede que se dicte sentencia sumaria. *Pérez Vargas v. Office Depot, supra,* pág. 699 y los casos allí

citados. Por ser éste un remedio de carácter discrecional, "[e]l sabio discernimiento es el principio rector para su uso porque, mal utilizada, puede prestarse para despojar a un litigante de 'su día en corte', principio elemental del debido proceso de ley". *Mgmt. Adm. Servs. Corp. v. E.L.A.,* 152 DPR 599, 611 (2000); *León Torres v. Rivera Lebrón, supra,* pág. 44. Siendo así, **procede que se dicte la sentencia sumaria** "**cuando surge de manera clara que, ante los hechos materiales no controvertidos, el promovido no puede prevalecer ante el Derecho aplicable y el Tribunal cuenta con la verdad de todos los hechos necesarios para poder resolver la controversia**". (Énfasis nuestro). *Meléndez González et al. v. M. Cuebas, supra*, págs. 109-110, que cita a *Const. José Carro v. Mun. Dorado*, 186 DPR 113 (2012).

Por su parte, la Regla 36.3 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 36.3, establece ciertos requisitos de forma en extremo detallados con los que debe cumplir una solicitud de sentencia sumaria, al igual que su oposición. *León Torres v. Rivera Lebrón, supra,* pág. 43. Conforme con ello, **la parte promovida no puede descansar en las aseveraciones o negaciones consignadas en su alegación**. Por el contrario, está obligada a enfrentar la moción de su adversario de forma tan detallada y específica como lo ha hecho el promovente en su solicitud puesto que, de incumplir, corre el riesgo de que se dicte sentencia sumaria en su contra, de proceder en derecho. (Citas omitidas). *Id.*

En cuanto a la revisión *de novo* de un dictamen sumario o la denegación de la resolución abreviada, este tribunal revisor se encuentra en la misma posición que el foro de primera instancia al determinar si procede o no una sentencia sumaria. Sin embargo, al revisar la determinación del tribunal primario, estamos limitados de dos maneras: (1) únicamente consideramos los documentos que se presentaron ante el foro de primera instancia; y (2) sólo podemos

determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, así como si el derecho se aplicó de forma correcta. Este tribunal deberá, además, realizar un **examen dual** que consiste, primero, en **analizar los documentos** que acompañan la solicitud de sentencia sumaria y en la oposición, así como aquellos que obren en el expediente del tribunal; y segundo, **determinar si el oponente de la moción controvirtió algún hecho material y esencial; o si hay alegaciones de la demanda que no han sido refutadas en forma alguna por los documentos**. *Vera v. Dr. Bravo*, 161 DPR 308, 333 (2004).

## C.

El hoy derogado Artículo 1802 del Código Civil de 1930, 31 LPRA ant. sec. 5141, vigente a los hechos acontecidos entre el 2 al 5 de agosto de 2020,[26] disponía que todo aquél que por acción u omisión cause un daño a otro vendrá obligado a repararlo, si ha mediado culpa o negligencia. Para poder reclamar daños y perjuicios bajo este precepto, el Tribunal Supremo ha expresado que el demandante debe establecer la existencia de tres requisitos: (1) la existencia de un daño real; (2) **el nexo causal entre daño sufrido y la acción u omisión del demandado**; y (3) que el acto u omisión es culposo o negligente. *Cruz Flores et al. v. Hosp. Ryder et al.*, 210 DPR 465, 483 (2022); *Pérez et al. v. Lares Medical et al.*, 207 DPR 965, 976 (2021); *López v. Porrata Doria*, 169 DPR 135, 150 (2006).

Respecto al concepto de culpa y negligencia, nuestro más alto foro ha opinado que consiste en la:

> falta del debido cuidado, que a la vez consiste en no anticipar y prever las consecuencias racionales de un acto, o de la omisión de un acto, que una persona prudente habría de prever en las mismas circunstancias. *López v. Porrata Doria, supra*, pág. 151; *Toro Aponte v. E.L.A.*, 142 DPR 464, 473 (1997); reiterado

---

[26] Véase, Artículo 1815 del Código Civil de 2020, 31 LPRA sec. 11720, el cual dispone, en parte, que "[l]a responsabilidad extracontractual, tanto en su extensión como su naturaleza, se determina por la ley vigente en el momento en que ocurrió el acto u omisión que da lugar a dicha responsabilidad. [...]".

en *Cruz Flores et al. v. Hosp. Ryder et al.*, *supra,* pág. 483.

Por tanto, el deber de previsión es el criterio central para que se adjudique responsabilidad por culpa o negligencia. *Cruz Flores et al. v. Hosp. Ryder et al., supra*, pág. 484; *Dworkin v. S.J. Intercont. Hotel Corp.*, 91 DPR 584, 587 (1964). Claro está, **el deber de previsión no se extiende a todo riesgo posible**, más bien, se debe examinar **si un daño pudo ser el resultado natural y probable de un acto negligente**. Es decir, debemos evaluar si después del suceso, ponderado retroactivamente, tal daño aparece como la consecuencia natural y probable del acto que se alega fue negligente. *Cruz Flores et al. v. Hosp. Ryder et al.*, *supra*; *Montalvo v. Cruz*, 144 DPR 748, 756-757 (1998). Ello así, porque la norma es que el riesgo que debe preverse debe estar basado en probabilidades y no en meras posibilidades. *López v. Porrata Doria, supra*, págs. 164-165.

Como se conoce, "**se requiere que entre dicho acto culposo o negligente y el daño sufrido deba existir un nexo causal adecuado**". (Énfasis nuestro). *Cruz Flores et al. v. Hosp. Ryder et al.*, *supra*. La doctrina de la causalidad adecuada establece que "no es causa toda condición sin la cual no se hubiera producido el daño, sino la que ordinariamente lo produce según la experiencia general". *Pérez et al. v. Lares Medical et al.*, *supra*, pág. 977; *López v. Porrata Doria*; pág. 151-152.; refrendado en *Cruz Flores et al. v. Hosp. Ryder et al.*, *supra*, págs. 484-485. De manera que, **para demostrar el elemento del nexo causal, debe existir una relación entre el daño y la consecuencia razonable, común y natural de la acción u omisión imputada al autor demandado**. *Montalvo v. Cruz, supra*, págs. 756-757. Es esa relación directa la que permite concluir que **el acto torticero imputado es la causa adecuada del daño reclamado**. *Cruz Flores et al. v. Hosp. Ryder et al., supra*, pág. 485. Así, pues, para determinar cuál fue la causa del daño, el demandante

tiene que probar que el acto culposo o la omisión negligente del demandado fue lo que, con mayor probabilidad, ocasionó el perjuicio reclamado. *Santiago v. Sup. Grande*, 166 DPR 796, 819 (2006). Nuestro ordenamiento exige, además, que **el deber de indemnizar presupone la existencia de un nexo causal**. *Estremera v. Inmobiliaria Rac, Inc.*, 109 DPR 852, 856 (1980). Por ello, la relación causal entre el acto negligente y los daños producidos debe ser **suficiente en Derecho**. *López Delgado v. Cañizares*, 163 DPR 119, 133 (2004).

En lo que atañe al caso del título, el Artículo 1803 del Código Civil de 1930, 31 LPRA ant. sec. 5142, disponía que, por la responsabilidad extracontractual, también respondían los dueños o directores de un establecimiento o una empresa respecto de los perjuicios causados por sus empleados en el servicio que ofrecen o con ocasión de su función. En el caso de las instituciones hospitalarias, "el incumplimiento de ese deber por el personal del hospital conlleva responsabilidad extracontractual de la institución hospitalaria frente al perjudicado". *Cruz Flores et al. v. Hosp. Ryder et al.*, *supra*, pág. 488-489; *Núñez v. Cintrón*, 115 DPR 598, 613 (1984).

**Un hospital público o privado no es un asegurador de sus pacientes contra todo daño que éstos puedan infligirse o que les causen otras personas**. *Hernández v. La Capital*, 81 DPR 1031, 1037 (1960). La norma vigente en cuanto a la responsabilidad de los hospitales es que éstos responden por aquellos daños causados por actos de comisión u omisión realizados por sus empleados y funcionarios y comprendidos en el ámbito de sus funciones. *Cruz Flores et al. v. Hosp. Ryder et al.*, *supra*, pág. 489. En lo pertinente, las instituciones hospitalarias tienen el deber de ofrecer al paciente el cuidado y la atención razonables que las circunstancias exigen, acorde con normas de razonabilidad, prudencia y de acuerdo con las

prácticas prevalecientes. *Cruz Flores et al. v. Hosp. Ryder et al.*, *supra*, pág. 489.

En consideración a la responsabilidad de las enfermeras por actos u omisiones, el Tribunal Supremo ha resuelto que una enfermera debe ejercitar un grado de cuidado razonable para evitar causar daño innecesario al paciente, y dicho grado de cuidado debe responder al grado de cuidado ejercitado por otras enfermeras en la localidad o localidades similares. *Blas v. Hosp. Guadalupe*, 146 DPR 267, 307 (1998), *Castro v. Municipio de Guánica*, 87 DPR 725, 728-729 (1963). "En los hospitales del país las enfermeras y el resto del personal paramédico tienen el ineludible deber de realizar y llevar a cabo, con la premura requerida y a tono con las circunstancias particulares de cada paciente, las órdenes médicas". *Núñez v. Cintrón*, *supra*, págs. 608-609.

**III.**

En la causa presente, en el único señalamiento de error, la parte peticionaria aduce que el Tribunal incidió al tomar una determinación sin considerar la totalidad del expediente y el estándar hermenéutico de una solicitud de resolución abreviada.

Como cuestión de umbral, si bien la Regla 52.1 de Procedimiento Civil, *supra*, sólo autoriza nuestra intervención cuando se deniega una moción dispositiva, lo cierto es que, por excepción, contempla aquellas instancias en que, por el efecto sobre las partes, la espera al proceso de apelación constituiría un fracaso de la justicia. Además, conforme la Regla 40 de nuestro Reglamento, *supra*, se aconseja nuestra intervención, por la idoneidad de la etapa del procedimiento. Nótese que el descubrimiento de prueba ha culminado; y las partes se encuentran en conversaciones para confeccionar el informe de conferencia con antelación al juicio,[27] por

---

[27] Refiérase a la *Minuta* de la vista de estado de los procedimientos celebrada por videoconferencia el 18 de marzo de 2025, entrada 277 del SUMAC.

lo que nuestra intervención no resulta en un fraccionamiento indebido del pleito ni una dilación indeseable.

En el presente caso, la parte apelante nos invita a revocar la determinación del foro de primera instancia. Para ello, reproduce las alegaciones de su reclamación.[28] En esencia, alegan los apelantes que el HGMI y cinco de sus empleadas incurrieron en negligencia hospitalaria, en alusión a la laceración en la cabeza y el hematoma en la espalda de F.R.R.C., así como en el manejo de la querella.

Tal como se desprende del expediente, F.R.R.C. fue trasladado a la habitación de la señora Casas Rivera el 2 de agosto de 2020 a las 11 de la noche para alojamiento en conjunto. La parte apelante reconoció en su escrito que la mayor parte del tiempo F.R.R.C. estuvo con sus progenitores en la habitación, hasta el alta el 5 de agosto de 2020 a las ocho de la mañana. No obstante, insiste en su insatisfacción ante la ausencia de una explicación plausible por parte de la parte apelada. Ante ello, presentó la querella en el HGMI y, luego, la reclamación del título.

Según esbozamos, en esta ocasión, nos compete realizar una revisión *de novo* de los escritos y documentos presentados por los litigantes, enmarcados en la doctrina de la responsabilidad civil extracontractual. Como se conoce, para que prevalezca la reclamación extracontractual y vicaria, se requiere probar por preponderancia la convergencia de un acto culposo u omisión negligente, un daño real y el nexo causal entre éstos. En este caso, sin embargo, luego de culminado el descubrimiento de prueba y

---

[28] En síntesis, las alegaciones de negligencia reproducidas son: (1) por las estimulaciones innecesarias al nacer que le causaron en la espalda una equimosis o hematoma; (2) por la falta de explicación y notificación inmediata de las enfermeras Aponte Berríos y Luna Green a los progenitores, al pediatra y al Programa de Manejo de Riesgo de la laceración de la cabeza; (3) por la ausencia de notificación y documentación en el expediente acerca del tratamiento que la enfermera Luna Green dio a la lesión de la cabeza, la cual no validó con una orden médica; y (4) la responsabilidad vicaria del HGMI. Cabe señalar que, con respecto a la enfermera Luna Green, la parte apelante admitió las determinaciones de hechos 6-7 y 12-13 las cuales la eximen de responsabilidad con relación a la laceración de la cabeza y el hematoma de la espalda.

presentada una solicitud para que se dicte parcialmente una sentencia sumaria, **la parte apelante no ha logrado demostrar los elementos esenciales de su causa de acción ni derrotar las seis determinaciones que impugnó**, según propuestas por la parte apelada y acogidas por el foro *a quo*. Somos conscientes de las contenciones de los apelantes, pero no podemos hacer abstracción de la ausencia de prueba para sostenerlas. Veamos.

La determinación **3** establece la ausencia de prueba para imputar responsabilidad a la enfermera Aponte Berríos. La señora Casas Rivera se limita a expresar que nadie le dijo nada sobre la laceración. En la deposición que prestó dijo:

> P. ¿Sabe usted si la señora [He]rmelinda Aponte Berríos fue la que le causó la laceración a su hijo?
>
> R. No sé.
>
> P. ¿Sabe usted si fue [He]rmelinda Aponte Berríos quien le ocasionó los hematomas en la espalda?
>
> R. No sé.[29]

Según se aprecia, la señora Casas Rivera desconoce las conductas, actos u omisiones que harían responsable a la señora Aponte Berríos. A pesar de que la enfermera Aponte Berríos se sometió a una deposición y se cuenta con el expediente del HGMI, la apelante no aportó prueba que la vincule con la laceración y con el hematoma. Por igual el señor Rodríguez Maldonado no tiene evidencia sobre si la enfermera Aponte Berríos le ocasionó las marcas en la espalda o la laceración en la cabeza a F.R.R.C. Esto dijo el apelante:

> P. Vamos a ser más específicos. ¿Usted tiene alguna evidencia de que Hermelinda Aponte Berríos le haya causado las marcas en la espalda a [F.R.R.C.]?
>
> R. [No verbalizó la respuesta].
>
> P. No lo escuché.
>
> R. No.
>
> P. ¿Usted tiene evidencia, del tipo que sea, que Hermelinda Aponte Berríos le causó la laceración en la cabeza a [F.R.R.C.]?

---

[29] Apéndice de la parte peticionaria, págs. 158 línea 25; 159 líneas 1-5.

R. No tengo evidencia ni certeza.[30]

Aun más, el perito Miranda Aponte ni siquiera pudo concluir que el daño alegado haya ocurrido en el *nursery*, bajo el cuidado de las enfermeras.

P. Doctor, usted, al día de hoy, no cuenta con evidencia objetiva para concluir que la laceración objeto de este caso, en el bebé, ocurrió en el "nursery".
R. La contestación es que no.[31]

Luego de remitir el *Informe Médico Pericial.*, el perito advino en conocimiento que F.R.R.C. estuvo la mayor parte del tiempo en la habitación junto a sus progenitores. Por ende, enmendó el documento pericial: "Sí, pero como después de, de rendir el informe, hoy es que me entero que no estuvo en el 'nursery', que lo enviaron al cuarto con la mamá, pues tengo que enmendarlo en el... por el lugar [...] que ya no es... no fue en el 'nursery'. [...] Porque si no fue en Sala de Operaciones y no fue al 'nursery' y lo llevaron allí, pues fue en el cuarto. [...] [E]stoy categóricamente diciendo que si no fue al 'nursery', estoy enmendando también el lugar".[32]

La determinación **23** asevera que el perito Miranda Aponte admitió que la literatura de "Centers for Medicare and Medicaid Services" y de la "Joint Commission" utilizada en el *Informe Médico Pericial* no establece que la enfermera Luna Green tenía el deber notificar inmediatamente al Programa de Manejo de Riesgo del HGMI el hallazgo de la laceración. Específicamente, en ninguna parte de la literatura que éste utilizó para rendir su opinión dice que la notificación tiene que ser *inmediatamente*. "Dice que hay que notificarlo, pero no establece el marco de tiempo...".[33] Del expediente se desprende que la imputada notificó al doctor Rodríguez Matos, el

---

[30] Apéndice de la parte peticionaria, pág. 331 líneas 2-12.
[31] Apéndice de la parte peticionaria, pág. 668 líneas 11-15.
[32] Apéndice de la parte peticionaria, pág. 573 líneas 4-21.
[33] Apéndice de la parte peticionaria, pág. 597 líneas 7-8.

cual examinó la laceración y ordenó que se le aplicara triple antibiótico al área.

En cuanto al enunciado **24**, el doctor Miranda Aponte admitió que no hubo actos u omisiones negligentes en el manejo de la querella que presentó la señora Casas Rivera, sino que la contestación que recibió no la satisfizo. El perito declaró:

> P. Mire, ¿qué actos u omisiones negligentes usted específicamente encuentra que se dieron en este caso con relación al manejo de esta querella presentada por Margarita Casas?
>
> R. Bueno, eh... eh... yo creo que... No es acto negligente. Es que, ciertamente, la contestación a la querella no satisface las necesidades y las inquietudes de la demandante...[34]

En su oposición a la resolución sumaria, la parte apelante se opuso, pero no contrarrestó con fundamentos, las determinaciones **25** y **26**. En éstas, el doctor Miranda Aponte concluyó que la señora Suárez Olivieri y la licenciada Toro Colón no incurrieron en negligencia. Así lo sustenta su testimonio:

> P. O sea, que no es un acto negligente *per se* que usted le imputa a la señora Johanny Suárez con relación al manejo de esta querella.
>
> R. Yo no podría decir que es negligente. Es que, simplemente, no se atendió el caso, como tal, porque yo creo que... que la querella se aceptó, la querella se refirió, la querella se contestó. Lo que sucede es que en esencia, no resolvió porque la querella en ningún momento explica cómo ocurrió la laceración.[35]
>
> .     .     .     .     .     .     .     .
>
> R. Pero la palabra... palabra "negligente" no... no... no cabe, porque no... no... no hay consecuencias directas de daño, como tal. Es, simplemente, que no se... que no se atendió, como tal, por las alegaciones en mi informe pericial y que el producto pues no satisface porque no dice nada.[36]
>
> .     .     .     .     .     .     .     .
>
> P. Entiendo. Y me mencionó Johanny Rodríguez. Es Johanny Suárez a la que usted se refiere, ¿correcto?
>
> R. Es correcto. Disculpe.
>
> P. No se apure. O sea, que según su opinión, ni Johanny Suárez ni Maribel Toro incurrieron en actos u omisiones negligentes en este caso.

---

[34] Apéndice de la parte peticionaria, págs. 668 línea 25; 669 líneas 1-7.
[35] Apéndice de la parte peticionaria, pág. 669 líneas 9-18.
[36] Apéndice de la parte peticionaria, pág. 670 líneas 8-13.

R. Es cierto. No... no hay una consecuencia, hasta donde yo sé, sobre eso...[37]

Por último, en el enunciado **27** se afirma que el perito Miranda Aponte exoneró a la enfermera Santini Torres de haber incurrido en algún acto u omisión negligente.

P. Okey. Vamos con María Santini. ¿Qué acto u omisión negligente cometió María Santini en este caso?
R. ¿María Santini?
P. Sí.
R. Ninguna.[38]

.      .      .      .      .      .      .      .

P. O sea, que Marina [*sic*]... María Santini no hay acto u omisión de negligencia.
R. Eso es correcto. Y si verifica mi testimonio, eso fue lo que yo dije.[39]

Una vez realizado un análisis puntilloso de los escritos judiciales de las partes y los documentos anejados, con relación a las cinco apeladas y al HGMI, no encontramos evidencia que refute los hechos materiales y esenciales consignados en el dictamen, de manera que se justifique someterlas a los rigores de un juicio. Decididamente, la parte apelante se limitó a descansar en sus propias alegaciones, sin controvertir de manera detallada y específica los enunciados probados sumariamente. Por lo tanto, procede refrendar las conclusiones del foro recurrido.

**IV.**

Por los fundamentos expuestos, acordamos expedir el auto discrecional de *certiorari* y confirmar el dictamen recurrido. En consecuencia, se desestiman las causas de acción de responsabilidad civil extracontractual, en contra de Hermelinda Aponte Berríos, Soneida Luna Green, María Santini Torres, Johanny Suárez Olivieri, Maribel Toro Colón y el Mennonite General Hospital Inc., en cuanto a la responsabilidad vicaria imputada por éstas.

---

[37] Apéndice de la parte peticionaria, pág. 700 líneas 3-10.
[38] Apéndice de la parte peticionaria, págs. 696 líneas 23-24; 697 líneas 1-4.
[39] Apéndice de la parte peticionaria, pág. 702 líneas 2-5.

Devolvemos el caso ante la consideración del Tribunal de Primera Instancia, Sala Superior de Aibonito, para la continuación de los procedimientos.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


                              Lcda.  Lilia M. Oquendo Solís
                         Secretaria del Tribunal de Apelaciones